IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROSEMARY AGUINIGA,

        Plaintiff,                               No. CIV S-07-0324 EFB

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendants.                     <u>ORDER</u>
_____/

Plaintiff moves for an award of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1). She seeks an award of $9,654.68, for 58 hours of work,[1] at an hourly rate of $166.46.[2] Defendant opposes the motion on the ground that the Commissioner's position was "substantially justified," or, alternatively, that the number of hours requested is

---

[1] Plaintiff initially sought a total award of $9,405.00, based on 56.5 hours of work, but has since added 1.5 hours for preparing the reply brief to the present motion. *See* Reply, Dckt. No. 25, at p. 3, n. 1, and accompanying text.

[2] EAJA rates are based on a threshold of $125 per hour, plus cost-of-living adjustments. *See* 28 U.S.C. § 2412(d)(2)(A)(ii); *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001); *Thangaraja v. Gonzales*, 428 F.3d 870, 876-877 (9th Cir. 2005). Plaintiff's request conforms with the annual statutory maximum hourly rates for EAJA awards published by the Ninth Circuit. *See* http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039.
Plaintiff seeks the 2007 rate for all of her requested work, including 3.75 hours billed in 2008, and 1.5 hours billed in 2009. See Plaintiff's Memorandum, Dckt. No. 23, at p. 1, and Dckt. No. 23-3, at pp. 1-2; see also, Reply, at p. 3, n. 1.

1

excessive.

The EAJA provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Flores v. Shalala*, 49 F.3d 562, 568-69 (9th Cir. 1995). An applicant for Social Security benefits receiving a remand under sentence four of 42 U.S.C. § 405(g), as here, is a prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 301-302 (1993). The burden of establishing substantial justification is on the government. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). The Supreme Court has defined "substantial justification" as "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person. . . . no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit . . . " *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Thus, "a position can be justified even though it is not correct, and . . . can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.,* 487 U.S. at 566, n. 2." *See also, Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); *Le v. Astrue*, 529 F.3d 1200, 1201 (9th Cir. 2008).

"The nature and scope of the ALJ's legal errors are material in determining whether the Commissioner's decision to defend them was substantially justified." *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996) (citing *Flores v. Shalala*, 49 F.3d at 570). Consideration of these matters "focus[es] on the reasonableness of the Commissioner's position in the remand proceedings instead of the reasonableness of the Commissioner's position in the full range of proceedings related to the disability determination." *Lewis v. Barnhart,* 281 F.3d at 1085.

Plaintiff herein was found disabled pursuant to her second application for Title II benefits. Pending that decision, plaintiff pursued, in the instant case, the denial of her initial application for Title II benefits. At issue before this court was the closed period from July 28,

2000 to September 17, 2002. In a decision filed September 17, 2008, the undersigned found that the ALJ erred in evaluating plaintiff's residual functional capacity by failing to credit the opinions of plaintiff's treating and examining physicians, and by improperly discrediting plaintiff's subjective complaints. The case was remanded to the Commissioner for payment of benefits.

The Commissioner contends that the government's position was substantially justified because the ALJ gave supported reasons, based on permissible factors, for rejecting the opinion of plaintiff's treating physician, and for discrediting plaintiff's testimony. Specifically, the Commissioner argues that the ALJ properly rejected the opinion of plaintiff's treating rheumatologist, Dr. Kenneth Weisner, because that opinion was premised on plaintiff's subjective complaints and because Dr. Weisner had previously opined that plaintiff should train for alternative employment. The Commissioner further argues that the ALJ properly discredited plaintiff's subjective complaints because they were inconsistent with the record as a whole, and properly relied on the opinion of examining physician Dr. John Branscum in support of the ALJ's residual functional capacity assessment. Defendant's Memorandum, Dckt. No. 24, at pp. 3-5.

These arguments do not accurately reflect the ALJ's analysis.

The ALJ found that plaintiff has the impairments of "history of De Quervain's tendonitis of the dominant right wrist; left elbow lateral epicondylitis; slight carpal tunnel symptoms of the right hand; carpal tunnel symptoms on the left; lupus, unclassified systemic rheumatic disease characterized by positive ANA, elevated sedimentation rate, elevated immunoglobulins, joint pain, and fibromyalgia." Dckt. No. 19, at p. 3 (quoting AR at 21-22). The ALJ found that these impairments "can cause significant vocationally relevant limitations," *id.* at p. 7 (quoting AR at 16), and concluded that plaintiff "has manipulative limitations of no more than occasional use of her hands for manipulative activities," *id.* at p. 4 (quoting AR at 21-22). The ALJ nonetheless found, based on the testimony of a vocational expert, that plaintiff could perform light work,

including jobs of counter clerk, scaling machine operator, bakery worker, election clerk, children's attendant, and call-out operator. *Id*. at p. 4, quoting AR at 21-22. The ALJ gave "little evidentiary weight to the extreme findings of total disability assessed by the claimant's treating physician, Dr. Wiesner," because "the opinion is not supported by detailed, clinical diagnostic evidence," "did not cite objective findings that relate to functional limitations and restrictions assessed," and "based solely upon the claimant's recitation of her subjective complaints." AR 19-20.

The court found that the ALJ's rejection of the opinion of Dr. Wiesner, as well as the opinions of plaintiff's examining physicians, Dr. John Branscum (notwithstanding the ALJ's purported reliance thereon), and Dr. Carl Wolf, was "neither specific and legitimate nor clear and convincing," due to the ALJ's mischaracterization of the record. The court emphasized that, despite the ALJ's findings to the contrary, Dr. Weisner *had* made objective findings and rendered specific diagnoses[3] in support of his ultimate conclusion that plaintiff is unable to perform gainful employment, AR 285, consistent with the opinion of Dr. Branscum that plaintiff had lost "75% of her preinjury capacity for pushing, pulling, grasping, gripping, pinching, holding, torquing and performing similar activities and activities requiring finger dexterity," AR 343, and the opinion of Dr. Wolf that plaintiff can lift only five pounds occasionally, AR 363. Order, Dckt. No. 19, at pp. 9-14. The court found that the ALJ had "glossed over Dr.

---

[3] Noting the consistency of Dr. Wiesner's opinion with that of examining physician Dr. Branscum, this court stated: "Dr. Wiesner pointed to objective findings to support his endorsement of Dr. Branscum's opinion – specifically, the positive Phalen's, Tinel's and Finkelstein's signs. AR 291, 289, 292, 294, 297, 357. Further, during the relevant period Dr. Wiesner diagnosed plaintiff with 'left elbow epicondylitis, work-related, secondary to repetitive trauma,' De Quervain's tenosynovitis involving the right wrist, 'secondary form of fibromyalgia,' 'unclassified systemic rheumatic disease characterized by a positive ANA, elevated sed rate, joint pain, sicca, and elevated immunoglobulins.' AR 244, 251." Order, Dckt. No. 19, at p. 11. The court further noted Dr. Wiesner's objective findings of "tenderness over the lateral epicondyle (AR 249, 250-51), extreme tenderness over the medial epicondyle (AR 246), trigger point tenderness at chest wall, elbows, knees, ankles, and shins, consistent with fibromyalgia (AR 244, 246, 252, 253, 297), dry eyes and mouth (AR 252), and positive Tinel's and Finkelstein's signs (AR 289, 292, 294, 297, 357)." Id., at p. 12.

4

Branscum's conclusions (even though they were shared by plaintiff's treating rheumatologist), and mischaracterized them as 'essentially consistent' with the ALJ's conclusion that plaintiff was capable of 'performing a significant range of light [work],' *id.* at 13 (citing AR 20, 22). As found by this court, "only the non-examining state agency physician found plaintiff capable of performing a significant range of light work." *Id.* at 13. As the court noted, the opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).

This court further found that the ALJ "completely ignore[d] the medical evidence" to conclude "that plaintiff's 'allegations as to multiple symptoms and limitations, [were] exaggerated and thus less than fully credible, and . . . [were not] supported by the weight of the medical evidence.'" Order, at p. 15 (quoting AR 21). The court found that the medical record contradicted the ALJ's "observation that 'the record does not document ongoing significant objective evidence of muscle atrophy, deconditioning or muscle weakness,'" and his finding that "'there is no indication that the claimant's treating source has ever recommended any treatment other than physical therapy, antiinflammatory, pain medications and splinting of her wrists.'" *Id.* Rather, the court noted that "[t]he record contains relevant evidence indicating substantial losses in strength and in plaintiff's ability to hold, push, pull, grasp and grip objects," as well as Dr. Wiesner's referral of plaintiff to hand surgeon Dr. James Lilla, who recommended against surgery because it might exacerbate plaintiff's symptoms. Order, at pp. 15-16 (citing AR 343, 253, 195). Concluding that plaintiff's testimony was in fact "largely consistent with the opinions of Drs. Branscum and Wiesner – an examining physician and treating physician, respectively – which were improperly rejected or mischaracterized by the ALJ," this court credited both these medical opinions and plaintiff's testimony as a matter of law, which together "clearly" demonstrated that plaintiff was unable to engage in substantial gainful activity during the relevant period. Order, at p. 16.

Thus, it was the repeated finding of this court that the ALJ mischaracterized the medical evidence, improperly relied on the opinion of a non-examining State Agency physician that contradicted the clear weight of the medical record, and improperly discredited plaintiff's subjective complaints as inconsistent with the medical record.

The Commissioner's defense of such "basic and fundamental errors" by the ALJ, *Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998), renders its position before this court not substantially justified. Accordingly, an award of fees is appropriate.

The Commissioner argues, alternatively, that plaintiff's fee request is excessive in light of the expertise of plaintiff's counsel; the fact that her prior co-counsel represented plaintiff at the administrative level; the period at issue was finite, limited to a little over two years; the legal arguments presented were routine; and nearly one-half of plaintiff's opening brief consisted of the summary of the procedural history and evidence of record. The Commissioner asks the court to reduce plaintiff's fee to $6,533.55 (representing 39.25 hours work).

Plaintiff's counsel responds that all of the documented hours were necessary to achieve the favorable result in this case, and that the amount requested is consistent with other fee awards obtained by counsel in this court.[4] *See generally*, Reply, Dckt. No. 25.

The EAJA expressly provides for an award of "reasonable" attorney fees. 28 U.S.C. § 2412(d)(2)A). "A district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers, but it must provide enough of an explanation to allow for meaningful review of the fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). Factors to be considered include whether the hours claimed are adequately documented, without evidencing "duplicative efforts" or "excessive staffing," and whether the hours were

---

[4] Plaintiff's counsel states that the Eastern District has authorized her receipt of the following fee awards: $8,045.26 (49.5 hrs) in *Hicks v. Astrue*, CIV S-05-1830 GGH; $8,807.44 (53.85 hours) in *Ha v. Astrue*, CIV S-06-1690 KJM; $15,708.57 (110.2 hours) in *Petit v. Commissioner of SSA*, CIV S-00-2456 DFL JFM; and, $8,763.03 (55.25 hours) in *Herron v. Barnhart*, CIV S-04-0964 DFL CMK (stipulated voluntary sentence four remand)." Reply at p. 3.

"reasonably expended" in light of the outcome of the action, that is, whether hours claimed improperly include time "expended on unrelated, unsuccessful claims."[5] *Id.* at 1146-1147. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The court is not persuaded by the Commissioner's argument that plaintiff's brief should have been shorter or less detailed because the issues before this court were limited to a finite period of relatively short duration. Plaintiff's impairments are several, overlapping, and of complex etiology, requiring an analysis based on temporal perspective. Nor is the court persuaded by the Commissioner's argument that counsel's expertise in Social Security cases, and the administrative representation of plaintiff by co-counsel, should have significantly shortened both the amount of time expended on briefing, and the length of plaintiff's brief. "[T]he expertise of plaintiff's counsel does not make the hours expended unreasonable. Social security cases are fact-intensive and require a careful application of the law to the testimony and documentary evidence, which must be reviewed and discussed in considerable detail." *Patterson v. Apfel*, 99 F. Supp.2d 1212, 1213 (C.D. Cal. 2000). Given the fact-intensive nature of disability proceedings generally, and this case in particular, and the necessity of re-framing the legal issues for each particular forum, co-counsel's familiarity with plaintiff's case was not readily transferrable to counsel's briefing before this court.

The court is, however, persuaded by the Commissioner's argument that the number of hours claimed for preparation of plaintiff's summary judgment motion should be reduced by the time counsel expended on briefing plaintiff's claim that the ALJ failed to consider the combined effect of all of plaintiff's impairments in his step-two severity analysis. As the court stated in its

---

[5] However, as recognized by the Supreme Court, "there is no certain method of determining when claims are 'related' or 'unrelated;'" rather, it is the responsibility of counsel to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437, n. 12 and related text (1983).

order, while "the ALJ did not set forth an explicit finding identifying which of plaintiff's alleged impairments were 'severe' at step two," "that finding is implicit based from the context of the ALJ's discussion of them." Order, Dckt. No. 19, at pp. 6, 7.  Responding to plaintiff's concern that impairments not clearly found severe at step two may be ignored in the remainder of the sequential analysis, the court responded, "[t]his argument ignores the function of step two as a gatekeeping mechanism to dispose of groundless claims.  Once a plaintiff prevails at step two, regardless of which impairment is found to be severe, the Commissioner proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact her ability to work." *Id.*, at p. 7 (citing 42 U.S.C. § 423(d)(2)(B)).[6]

Thus, the court finds that plaintiff's EAJA award should not include time expended on briefing this matter, which the court estimates at 6 hours based on review of counsel's billing record.[7]  The court will therefore reduce by 6 hours, or $996.00, plaintiff's fee request.  As a result, the court finds that a fee award based on 52 hours of work (a total of $8,632.00, at $166.00 per hour) is appropriate.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for an award of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1) (Dckt. No. 23), is GRANTED;

2. Plaintiff shall be awarded $8,632.00; and

---

[6] The court further explained, "[p]laintiff prevailed at step two.  Although the ALJ may have improperly discounted or mischaracterized evidence of plaintiff's functional limitations throughout the remaining steps of the sequential evaluation, as addressed below, this does not necessarily constitute error at step two.  Rather, the question is whether the ALJ properly considered the functional limitations of all medically determinable impairments at the remaining steps." Order, Dckt. No. 19, at pp. 7-8.

[7] Review of counsel's billing record indicates that the majority of time spent by counsel on August 21, 2007, in drafting plaintiff's memorandum, was devoted to this "Argument I" (the entry provides, "drafted Argument I and started on section II," 8.5 hours).  In addition, after completion of plaintiff's Arguments II and III, on August 22, 2007, counsel "finalized and edited [the] brief" on August 23, 2007, 6.75 hours).  Argument I constituted about 15% of plaintiff's briefing.  (In contrast, plaintiff was successful on Argument II, and needed to reach Argument III if the court disagreed with her Argument II.)

8

3. Said award shall be made payable to plaintiff's counsel, pursuant to the agreement between plaintiff and her attorney.

SO ORDERED.

DATED: November 13, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9